DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| GREAT BAY CONDOMINIUM OWNERS ASSOCIATION, INC; TIMOTHY O'BRIEN; and KEITH CHEATHAM, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 2017-33 |
| v. | ) ) ) | |
| GOVERNMENT OF THE VIRGIN ISLANDS and MARVIN L. PICKERING, DIRECTOR OF THE BUREAU OF INTERNAL REVENUE, in his official capacity | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

ATTORNEYS:

**Mark Wilczynski**
Law Office of Wilczynski & Garten, P.C.
St. Thomas, V.I.
    *For the plaintiffs.*

**Claude E. Walker, Attorney General**
**Carol Thomas-Jacobs, Assistant Attorney General**
Virgin Islands Department of Justice
St. Thomas, V.I.
    *For the defendants.*

## MEMORANDUM OPINION

GÓMEZ, J.

    Before the Court is the complaint of Great Bay Condominium Owners Association, Inc.; Timothy O'Brien; and Keith Cheatham.

## I.    FACTUAL AND PROCEDURAL HISTORY

    The Ritz-Carlton Club is a timeshare ownership program for Ritz-Carlton Club owned properties.

Great Bay Condominium Owners Association, Inc. (the "Association") is an association of owners of fractional interests in the Ritz-Carlton Club on St. Thomas. ECF No. 1, Complaint, at ¶ 1. Timothy O'Brien ("O'Brien") and Keith Cheatham ("Cheatham") (collectively with the Association ("Great Bay")) own fractional interests in the Ritz-Carlton Club on St. Thomas. *Id.* at ¶¶ 2-3.

Prior to March 8, 2008, all real property in the territory was taxed at a uniform rate. *See id.* at ¶ 20. On March 8, 2008, the Virgin Legislature enacted a new tax schedule. *Id.* That tax schedule (the "Disparate Tax Schedule") currently provides for different mill rates[1] for different types of real property: .004946 for unimproved non-commercial real property; .003770 for residential real property; .007110 for commercial real property; and .014070 for timeshare real property. *Id.*

On March 22, 2017, the Governor of the U.S. Virgin Islands, Kenneth Mapp, signed a law establishing the "Environmental/Infrastructure Impact Fee for Timeshares" (the "timeshare fee"). *Id.* at ¶ 9. That law imposes a $25 per day occupancy fee on timeshare occupants in the Virgin Islands. ECF

---

[1] "The mill rate is the amount of tax payable per dollar of the assessed value of a property." *Mill Rate*, Investopedia, https://www.investopedia.com/terms/m/millrate.asp.

No. 1, Complaint, at ¶ 9; 33 V.I.C. § 54(b)(3)(A). A timeshare plan is a form of property ownership that allows owners of interests in the plan to share rights to use the timeshare plan property, where typically each owner is allotted their own period of time for use. The timeshare plan manager is responsible for collecting the timeshare fee, filing tax returns, and paying the timeshare fee to the Virgin Islands Bureau of Internal Revenue. ECF No. 1, Complaint, at ¶ 9; 33 V.I.C. § 54(b)(3)(B). The timeshare association is responsible for any and all assessments and liens. ECF No. 1, Complaint, at ¶ 9; 33 V.I.C. § 54(b)(3)(B).

The law establishing the timeshare fee allocates 15% of the revenues from the timeshare fee to the V.I. Tourism Revolving Fund "for the express purpose of partnering with the timeshare industry to promote timeshare or vacation club sales in the Virgin Islands." ECF No.1, Complaint, at ¶ 10; *see also* 33 V.I.C. § 54(b)(3)(D)(i). The remaining 85% of the revenues will be allocated to the General Fund or for other purposes unrelated to timeshares. *See* ECF No. 1, Complaint, at ¶¶ 11-12; 33 V.I.C. § 54(b)(3)(D)(ii)-(iv).

The Virgin Islands Bureau of Economic Research is required to "conduct a study on the impact of timeshare activities and components in the Virgin Islands within two years of

implementation" of the timeshare fee. ECF No. 1, Complaint, at ¶ 12 (internal citations omitted); 33 V.I.C. § 54(b)(3)(F).

On May 3, 2017, Great Bay filed a seven-count complaint in this Court naming the Government of the Virgin Islands and the Director of the Bureau of Internal Revenue, in his official capacity (collectively, the "Virgin Islands" or "the Government"), as defendants. Count One alleges that the timeshare fee and Disparate Tax Schedule violate the Equal Protection Clause. Count Two alleges that the timeshare fee and Disparate Tax Schedule violate the Privileges and Immunities Clause. Count Three alleges that the timeshare fee and Disparate Tax Schedule violate the Commerce Clause. Count Four alleges that the timeshare fee's collection provisions violate the due process rights of the Association. Count Five alleges that the timeshare fee will reduce the value of timeshare property and, as such, constitutes a Fifth Amendment taking. Count Six alleges a taxpayer claim under local law, seeking to enjoin allegedly illegal acts.[2] Count Seven seeks a declaration as to the rights of the parties.

In sum, Great Bay seeks injunctive relief enjoining the defendants from enforcing the timeshare fee and from taxing

---

[2] Count Six does not identify any additional illegality other than the alleged illegality raised in the other counts.

timeshare owners at a higher rate. Great Bay also seeks a declaration that the timeshare fee and Disparate Tax Schedule violate the United States Constitution. Finally, Great Bay seeks damages and compensation for the alleged taking.

On June 22, 2017, the Virgin Islands filed a motion to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim ("the jurisdictional motion"). At a hearing on the jurisdictional motion, Great Bay acknowledged that it had the burden to establish jurisdiction. It also acknowledged its need to undertake discovery efforts to be fully prepared to address the jurisdictional issues raised in the Government's motion to dismiss. On March 22, 2018, the Court denied the jurisdictional motion without prejudice and ordered further briefing on the jurisdictional issues raised by this action. The parties thereafter engaged in extensive discovery. The parties have since submitted their briefs. As such, the jurisdictional issues raised in the jurisdictional motion to dismiss are now ripe for consideration.

## II. <u>DISCUSSION</u>

A party may bring either a facial or a factual challenge to the Court's subject-matter jurisdiction pursuant to Rule 12(b)(1). *Gould Electronics, Inc. v. United States,* 220 F.3d 169, 178 (3d Cir.2000). In considering a facial challenge

under Rule 12(b)(1), all material allegations in the Complaint are taken as true. *See Taliaferro v. Darby Twp. Zoning Bd.,* 458 F.3d 181, 188 (3d Cir.2006) (summarizing the standard for facial attacks under Rule 12(b)(1) as "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court"); *Mortensen,* 549 F.2d at 891 (explaining that, in ruling upon a facial attack under Rule 12(b)(1), "the court must consider the allegations of the complaint as true"). Indeed, the "standard is the same when considering a facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Petruska v. Gannon Univ.,* 462 F.3d 294, 299 (3d Cir.2006).

"[A] factual challenge[ ] attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (original alterations omitted) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)); *see also Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police*, 920 F.2d 198, 200 (3d Cir. 1990) (holding that the factual basis for jurisdictional allegations in a complaint could be disputed before an answer was served). Where a motion

to dismiss factually challenges the district court's jurisdiction, the court is not confined to the allegations in the complaint, but can consider other evidence, such as affidavits, depositions, and testimony, to resolve factual issues related to jurisdiction. *See Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (stating that because at issue is the very power of the trial court to hear the case, a court is free to weigh evidence beyond the allegations in the complaint). Furthermore, "no presumptive truthfulness attaches to plaintiff's allegations" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.*

### III. <u>ANALYSIS</u>

The Virgin Islands argues that the Tax Injunction Act ("TIA") bars the Court from exercising jurisdiction over this matter. The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

By its explicit terms, the TIA bars injunctive relief. The Supreme Court has held that the TIA extends to declaratory relief. *See California v. Grace Brethren Church*, 457 U.S. 393,

408-11, 102 S. Ct. 2498, 2508-09, 73 L. Ed. 2d 93 (1982). The Supreme Court has not addressed whether the TIA bars the recovery of damages.

The Supreme Court has also held that when a plaintiff challenges a tax, principles of comity (the "tax comity doctrine") prevent district courts from granting injunctive or declaratory relief or awarding damages when the state provides remedies that are "plain, adequate, and complete." *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116, 102 S. Ct. 177, 186, 70 L. Ed. 2d 271 (1981) (damages); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 297-302, 63 S. Ct. 1070, 1072-74, 87 L. Ed. 1407 (1943) (declaratory relief); *Matthews v. Rodgers*, 284 U.S. 521, 525-26, 52 S. Ct. 217, 219-20, 76 L. Ed. 447 (1932) (injunctive relief).

There is no significant difference between whether a remedy is plain, adequate, and complete and whether a remedy is plain, speedy, and efficient.[3] *See Fair Assessment in Real Estate Ass'n,*

---

[3] The Supreme Court has noted that the expansiveness of the comity doctrine renders the TIA somewhat superfluous. *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 432, 130 S. Ct. 2323, 2336, 176 L. Ed. 2d 1131 (2010). However, "[t]he … [TIA] was passed to plug two large loopholes [federal] courts had opened in applying the comity doctrine": (1) federal courts only considered whether a plain, adequate, and complete remedy was available in *federal court*; and (2) federal courts strictly construed whether a remedy was plain, adequate, and complete. *Id.* at n.3

At least one of those holes no longer exists. Federal courts applying the comity doctrine must now consider whether a plain, adequate, and complete remedy is available in state court. *See Fair Assessment in Real Estate Ass'n, Inc.*, 454 U.S. at 116.

*Inc.*, 454 U.S. at 137 ("We discern no significant difference, for purposes of the principles recognized in this case, between remedies which are "plain, adequate, and complete," as that phrase has been used in articulating the doctrine of equitable restraint, and those which are "plain, speedy and efficient," within the meaning of § 1341."); *see also Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 525 & n.33, 101 S. Ct. 1221, 1235, 67 L. Ed. 2d 464 (1981) (holding that not "every wrinkle of federal equity practice" addressing whether a remedy was plain, adequate, and complete was codified by Congress in the TIA, but further specifying that "prior federal equity cases" may be "instructive on whether a state remedy is 'plain, speedy and efficient'"). Nevertheless, the comity doctrine, unlike the TIA, may be waived by the states. *Levin v. Commerce Energy, Inc.*, 560 U.S. at 432.

Unlike the TIA, the tax comity doctrine also prohibits federal courts from invalidating state tax provisions where such invalidation would increase, rather than decrease, state taxes. *See Levin v. Commerce Energy, Inc.,* 560 U.S. 413, 426, 130 S. Ct. 2323, 2332-33, 176 L. Ed. 2d 1131 (2010). A federal court weighs several factors:

> in deciding whether to refrain, based upon comity, from deciding such a case, namely whether: (1) the challenged law concerned "commercial matters over

> which" the state "enjoys wide regulatory
> latitude"; (2) the suit requires adjudicating "any
> fundamental right or classification" to which
> heightened scrutiny applies; (3) the state courts
> are "better positioned than their federal
> counterparts to correct any violation" and provide
> a remedy; and (4) more than one potential remedy
> could adequately redress the alleged
> constitutional defect.

*Z & R Cab, LLC v. Philadelphia Parking Auth.*, 616 F. App'x 527,

531 n.8 (3d Cir. 2015)(citing *Levin,* 560 U.S. at 431–32, 130

S.Ct. 2323).

In its briefing, the Virgin Islands only invoked the TIA.

It did not assert that this action is barred by the tax comity

doctrine. Thus, as a preliminary matter, the Court must

determine whether, in addition to the TIA, the Court may also

consider the tax comity doctrine.

In the context of *Younger* abstention--another abstention

doctrine premised on comity concerns--courts have raised

abstention *sua sponte*. *See O'Neill v. City of Philadelphia*, 32

F.3d 785, 786 (3d Cir. 1994)("Even though the question of

*Younger* abstention was not raised by the parties on appeal, we

may consider it *sua sponte*."). The Court sees no reason to apply

a different rule with respect to the tax comity doctrine. That

is especially true where, as here: (1) the Virgin Islands has

raised the TIA, which is "best understood as but a partial

codification of the federal reluctance to interfere with state

taxation," *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 424, 130 S. Ct. 2323, 2332, 176 L. Ed. 2d 1131 (2010) (quoting *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 590, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995)); and (2) there is no record evidence of an express waiver of the tax comity doctrine. As such, the Court will consider both the TIA and the tax comity doctrine in this case.

The Third Circuit has on several occasions addressed whether the TIA and comity apply to the Virgin Islands. A review of those decisions will clarify issues relevant to the Court's analysis. As such, the Court will first review those decisions.

**A. Prior Third Circuit Jurisprudence Addressing the TIA and the Tax Comity Doctrine**

In 1972, in *Pan Am. World Airways, Inc. v. Duly Authorized Gov't of Virgin Islands*, 459 F.2d 387, 390–91 (3d Cir. 1972) ("*Pan American*"), the Third Circuit first addressed the application of the TIA and comity principles to the Virgin Islands. In that case, Pan American World Airways, Inc. ("Pan American"), filed an action seeking to have this court declare that the gross receipts tax imposed by 33 V.I.C. § 43(a) was unconstitutional as applied. *Pan American*, 459 F.2d at 389. This Court enjoined application of the tax, holding that the gross receipts tax was unconstitutional. The Third Circuit affirmed

the district court's ruling. *Id*. at 392, 395. The appellate

court held that the TIA did not apply to the territory. It

reasoned that:

> The statute providing for an arbitrary assessment,
> notice, opportunity for a stay of execution and
> for a hearing in the municipal court on the amount
> due provides to the taxpayer a plain, speedy and
> efficient remedy. In such circumstances if the
> Virgin Islands were a state and the district court
> were an Article III court it could not enjoin,
> suspend or restrain the assessment, levy or
> collection of the tax. 28 U.S.C. § 1341. *Cf.*
> Georgia R.R. & Banking Co. v. Redwine, 342 U.S.
> 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952). Under the
> judiciary subchapter of the Organic Act, however,
> the District Court of the Virgin Islands has both
> federal question jurisdiction and general original
> jurisdiction in all other causes in the Virgin
> Islands except in those cases where Congress has
> placed exclusive jurisdiction elsewhere. 48 U.S.C.
> § 1612. There is no indication that Congress
> intended that the district court, in the exercise
> of either its federal question jurisdiction or its
> original Virgin Islands jurisdiction should be
> subject to the strictures of 28 U.S.C. § 1341.
> Indeed no such notions of federalism as underlie
> limitations on the power of the federal district
> courts to enjoin certain state actions are
> applicable to the territories.

*Id.* at 390-91.

     In 1984, Congress amended the Revised Organic Act. As a

result of that amendment, this Court was granted the

jurisdiction of an Article III district court.[4] 48 U.S.C. §

1612(a). The 1984 amendments also provided that:

> The relations between the courts established by
> the Constitution or laws of the United States and
> the courts established by local law with respect
> to appeals, certiorari, removal of causes, the
> issuance of writs of habeas corpus, and other
> matters or proceedings shall be governed by the
> laws of the United States pertaining to the
> relations between the courts of the United States,
> including the Supreme Court of the United States,
> and the courts of the several States in such
> matters and proceedings.

48 U.S.C. § 1613.

In 2003, in *Bluebeard's Castle, Inc. v. Gov't of Virgin
Islands*, 321 F.3d 394 (3d Cir. 2003) ("*Bluebeard's Castle*"), the

Third Circuit revisited whether the TIA and comity concerns

apply in the Virgin Islands. In that case, a Virgin Islands

---

[4] The District Court was also granted "general original jurisdiction in all
causes in the Virgin Islands the jurisdiction over which is not then vested
by local law in the local courts of the Virgin Islands …." 48 U.S.C. §
1612(b). At the same time, the Virgin Islands legislature was authorized to
divest the Court of that jurisdiction. *Privateer Bay Mgmt. Corp. v. Heirs of
Sewer*, 102 F. App'x 228, 231 (3d Cir. 2004).

> Pursuant to this authority, the Virgin Islands legislature
> enacted a statute in 1990, 4 V.I.Code Ann. § 76(a), that
> divest[ed] the District Court of the Virgin Islands of
> jurisdiction of all local civil actions, but d[id] not divest
> the District Court of its federal question and diversity
> jurisdiction in civil actions. Thus the jurisdiction of the
> District Court of the Virgin Islands is equivalent, at least
> in the civil context, to that of a United States District
> Court.

*Id.* (internal citation omitted).

corporation, Equivest St. Thomas, Inc. ("Equivest"), challenged

the Virgin Islands tax assessment of three of its properties.

*Id.* at 396. Specifically, it argued that the assessed value of

the properties was higher than the actual value of the

properties. *Id.* At that time, 48 U.S.C. § 1401a provided that:

> all taxes on real property in the Virgin Islands
> shall be computed on the basis of the actual value
> of such property and the rate in each municipality
> of such islands shall be the same for all real
> property subject to taxation in such municipality
> whether or not such property is in cultivation and
> regardless of the use to which such property is
> put.

48 U.S.C. § 1401a (2003).

This Court "enjoined the Virgin Islands tax assessor from

employing a certain tax assessment method, concluding it

violated federal law." *See Bluebeard's Castle, Inc.*, 321 F.3d at

396. It also held that "[s]ince the subject of this lawsuit is a

federal statute and not a local, territorial tax, it is not

barred by the State Tax Injunction Act, 28 U.S.C. § 1341 …."

*Equivest St. Thomas, Inc. v. Gov't of Virgin Islands*, 208 F.

Supp. 2d 545, 548 (D.V.I. 2002). The Government of the Virgin

Islands appealed.

On appeal, the Third Circuit held that the district court

properly exercised its federal question jurisdiction.

*Bluebeard's Castle, Inc.*, 321 F.3d at 397-98. As part of that

holding, the Third Circuit determined that the suit was not

barred by the Tax Injunction Act or principles of comity. *Id.* It

reasoned that:

> [p]roperty taxes are generally governed by state law. As we discuss, the importance to the states of their tax systems is such that comity mandates that federal courts are ordinarily powerless to entertain challenges to state taxation, even under 42 U.S.C. § 1983. *Fair Assessment in Real Estate Assoc. v. McNary,* 454 U.S. 100, 116, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). But the Virgin Islands is not a state; it is a territory subject to Congress's broad power under Article IV, section 3, clause 2 of the United States Constitution to govern territories. *See Examining Bd. of Eng'rs, Architects and Surveyors v. Flores de Otero,* 426 U.S. 572, 587 n. 16, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1975).

*Id.* at 397 (footnote removed). The court also indicated that:

> Were it a state, the District Court may have been subject to the prohibition on tax injunctions under the Tax Injunction Act, 28 U.S.C. § 1341, which provides, "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."
>
> Where applicable, the Tax Injunction Act implicates federal subject-matter jurisdiction. *Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463, 470, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976); *Collins Holding Corp. v. Jasper County,* 123 F.3d 797, 799 (4th Cir.1997); *Cumberland Farms, Inc. v. Tax Assessor,* 116 F.3d 943, 945 (1st Cir.1997). Nevertheless, we have held that the Tax Injunction Act does not apply to the Virgin

> Islands. *Pan Am. World Airways v. Gov't of the V.I.,* 459 F.2d 387, 391 (3d Cir.1972).

*Id.* at 397 n.5.

The Third Circuit next considered whether principles of federalism barred the action and held that they did not. *See id.* at 400-01. In reaching that conclusion, the court first recognized that, unlike the states, the Virgin Islands has no inherent sovereignty to restrict Congress's legislative authority. *Id.* at 400. Continuing, the court stated:

> To be sure, property tax law in the Virgin Islands is, for the most part, "local" law, just as it is in the several states. *See Chase Manhattan Bank, N.A. v. Gov't of the V.I.,* 300 F.3d 320, 323 (3d Cir.2002) (characterizing property taxes as among several "local taxes" in the Virgin Islands). But its local character derives from Congress. To the limited extent that Congress has entered the field and instituted its own substantive requirements, the local character of property taxation in the Virgin Islands has been altered.
>
> The hybrid character of property taxation in the Virgin Islands may raise questions about the appropriate application of federalism principles in this case even assuming the Virgin Islands were accorded the equivalence of state sovereignty. "[P]rinciples of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration." *Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n,* 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995). But in this instance, the tax system is not a state tax system, nor is it entirely a territorial tax system. It is partially a federal tax system, and it is not apparent that the federal government should adopt

a hands-off approach to the federal aspects of a
hybrid federal/territorial system.

. . .

Furthermore, while the relative jurisdictions of
the territorial and district courts in the Virgin
Islands mirror the division of authority between
state and Article III district courts, this system
derives not from the Constitution, but solely from
congressional action. Before 1990, the District
Court of the United States Virgin Islands had
jurisdiction over most local matters, *Brow v.
Farrelly,* 994 F.2d 1027, 1034 (3d Cir.1993),
including property tax disputes, *e.g.*, *Ricardo v.
Ambrose,* 110 F.Supp. 716 (D.Vi.1953) (action
challenging property tax assessment). In 1984,
Congress vested traditional federal jurisdiction—
federal question and diversity—in the district
court, and permitted the Government of the Virgin
Islands to establish exclusive jurisdiction in the
territorial court over local matters. *Id.* at 1033.
In 1990, the Virgin Islands legislature divested
the district court of jurisdiction over local
disputes. *Id.* at 1023. Thus, just as the division
of Virgin Islands tax law into federal law and
territorial law is subject to Congress's
determination, so are the relative jurisdictions
of the territorial and the district courts.
Congress chose to regulate property taxation in
the Virgin Islands and it chose to grant
jurisdiction to the district court over actions
arising under federal law.

*Id.* at 400–01.

The Third Circuit next considered the application of the

Tax Injunction Act to the territory in 2009 in *Berne Corp. v.

Gov't of the Virgin Islands*, 570 F.3d 130 (3d Cir. 2009)

("*Berne*"). *Berne* was an appeal from the same underlying case as

*Bluebeard's Castle.*

In *Berne*, the plaintiffs and the Government of the Virgin Islands entered into a settlement in December, 2000, pursuant to which the Virgin Islands agreed to reform its tax assessment system within two years. *Id.* at 134. Various parties filed motions to enforce that settlement agreement. *Id.* In May, 2003, the district court entered a decree:

> enjoin[ing] the Government of the Virgin Islands from assessing all real property in the Virgin Islands until the District Court found (1) the government had established the property tax system mandated by the 1936 Act, and (2) the Board of Tax Review was consistently holding hearings and making determinations within a reasonable amount of time after an appeal. The District Court extended this injunction to all similarly situated taxpayers in the Virgin Islands but allowed the Government of the Virgin Islands to issue tax bills to non-party taxpayers based on assessment values for 1998 so long as it provided a mechanism to retroactively apply those assessment values. In response, the Virgin Islands legislature enacted Act 6586 to provide a mechanism to collect taxes from non-party taxpayers based on a 1998 assessment until the injunction was dissolved. Accordingly, in August 2003, the District Court modified the May 2003 Decree to allow the Government to collect these property taxes. *In re Tax Litig.,* 276 F.Supp.2d 435 (D.V.I.2003).

*Id.* (footnote removed).

After the district court issued its injunction, Congress repealed 48 U.S.C. § 1401a. *Id.* at 135. The Government of the Virgin Islands then issued tax bills for 2006, in violation of the May, 2003, injunction. *Id.* The district court found the

Government in contempt of its May, 2003, decree. *Id.* It ordered

the Government to:

> rescind all 2006 tax bills and to establish a
> special fund to satisfy any possible payment
> obligation imposed by the District Court in
> connection with this matter. The court also
> vacated the part of the May 2003 Decree that relied
> upon the repealed 1936 Act, but retained
> jurisdiction over the rest of the May 2003 Decree,
> which ordered reform of the operation of the Board
> of Tax Review.

*Id.* at 135.

The Government appealed. On appeal, the Government argued

that the Tax Injunction Act barred the district court from

exercising jurisdiction over the case. *Id.* at 136-37. The Third

Circuit considered the issue, stating:

> The Government of the Virgin Islands challenges
> the District Court's jurisdiction on an
> alternative ground. It contends the Senate Report
> accompanying the repeal of the 1936 Act reveals
> congressional intent to apply the Tax Injunction
> Act to United States territories, the Virgin
> Islands in particular. *See* S.Rep. No. 110-19, at 1
> (2007) ("The assessment and collection of real
> property taxes is fundamentally a local government
> issue with no Federal impact."). The Tax
> Injunction Act deprives federal courts of
> jurisdiction to "enjoin, suspend or restrain the
> assessment, levy or collection of any tax under
> State law where a plain, speedy and efficient
> remedy may be had in the courts of such State." 28
> U.S.C. § 1341. In 1972, we held the Tax Injunction
> Act does not apply to the Virgin Islands. *Pan Am.
> World Airways v. Gov't of the V.I.,* 459 F.2d 387,
> 391 (3d Cir.1972). We generally do not revisit
> decided issues except under special circumstances
> like an intervening change in the law. *See Council*

> *of Alternative Political Parties v. Hooks,* 179
> F.3d 64, 69 (3d Cir.1999). The Government of the
> Virgin Islands argues we should revisit our
> holding in *Pan American World Airways* because
> "Congress has made it clear that the Virgin
> Islands should be treated as a state with respect
> to property taxation." In light of the
> Government's contention, we will re-examine the
> application of the Tax Injunction Act to the
> Virgin Islands.
>
> The statutory repealer of the 1936 Act in its
> entirety reads: "Sections 1 through 6 of the Act
> of May 26, 1936 (Chapter 450; 49 Stat. 1372-1373;
> 48 U.S.C. 1401-1401e) are repealed." Pub.L. No.
> 110-40 (HR 57) (June 29, 2007). The accompanying
> Senate Report states: "The assessment and
> collection of real property taxes is fundamentally
> a local government issue with no Federal impact.
> No other State, territorial, or local government
> is subject to such Federal restrictions." S.Rep.
> No. 110-19, at 1 (2007). The Senate Report does
> not specifically reference the Tax Injunction Act,
> but it appears to align with our general
> understanding of the purpose of the Tax Injunction
> Act. As the United States Supreme Court stated in
> *Rosewell v. LaSalle National Bank,* "this
> legislation [the Tax Injunction Act] was first and
> foremost a vehicle to limit drastically federal
> district court jurisdiction to interfere with so
> important a local concern as the collection of
> taxes." 450 U.S. 503, 522, 101 S.Ct. 1221, 67
> L.Ed.2d 464 (1981).

*Id.* at 136-37 (footnote omitted). The Third Circuit then held

that, "[a]ssuming the Tax Injunction Act applie[d]," there was

no violation of the act because the Virgin Islands did not

provide a plain, speedy, and efficient remedy. *Id.* at 137-38.

*Great Bay Condominium Owners Association, Inc. et. al. v. Government of the*
*Virgin Islands, et. al.*
Civ. No. 2017-33
Memorandum Opinion
Page 21

**B. Tax Injunction Act**

Having reviewed the Third Circuit's previous rulings, the
Court will now consider whether the Tax Injunction Act applies
to the Virgin Islands. In *Pan American*, the Third Circuit held
that the TIA did not, by its terms, apply because: "no such
notions of federalism as underlie limitations on the power of
the federal district courts to enjoin certain state action are
applicable to the territories." *See Pan Am. World Airways, Inc.*,
459 F.2d at 391. After the 1984 amendments to the Revised
Organic Act, the Third Circuit suggested that the TIA might
apply if the Virgin Islands were a state, *see Bluebeard's
Castle, Inc.*, 321 F.3d at 397 n.5--apparently recognizing that
this Court now exercises the jurisdiction of an Article III
district court.

In *Berne*, the Third Circuit acknowledged its holding in *Pan
American* and *Bluebeard's Castle* regarding the non-applicability
of the TIA. *See Berne Corp.*, 570 F.3d at 136-37. It also
considered the repeal of 48 U.S.C. § 1401a, which imposed
federal restrictions on Virgin Islands's real property taxation.
*Id*. It found that the congressional intent underlying that
repeal "appears to align with our general understanding of the
purpose of the Tax Injunction Act." *Id*. at 137; *see also* S. Rep.
No. 110-19, at 1 (2007). Having reviewed *Pan American*,

*Bluebeard's Castle*, and the repealer, the *Berne* Court did not

squarely determine whether the view that the TIA does not apply

in the Virgin Islands remains valid. Rather, the *Berne* Court

seems to have acknowledged the evolving legal landscape

regarding the TIA in the Virgin Islands and chose to resolve

*Berne* without finding a need to reassess the TIA's applicability

in the Virgin Islands.

At the same time, Congress's repeal of 48 U.S.C. § 1401a

arguably evinced an intent to treat the Virgin Islands the same

as any other state with respect to local property tax

collection. Indeed, the Senate Report accompanying that repeal

provides, in pertinent part, that:

> The 1936 statute has long outlived its usefulness
> and now interferes with the Virgin Islands ability
> to perform an essential governmental function. The
> assessment and collection of real property taxes is
> fundamentally a local government issue with no
> Federal impact. No other State, Territorial, or local
> government is subject to such Federal restrictions.
> The Revised Organic Act of 1954, as amended, confers
> upon the people of the Virgin Islands full powers of
> local self-government. The 1936 statute is an
> anachronism that needs to be repealed.

S. Rep. 110-19, at 1-2.

From that report, the Third Circuit noted, that the

language in the Senate Report generally "align[s] with … the

purpose of the Tax Injunction Act." See Berne Corp, 570 F.3d at

137. The purpose of the TIA is to be "first and foremost a

vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 522, 101 S. Ct. 1221, 67 L. Ed. 2d 464 (1981). Given the language in the Senate Report, the Third Circuit's assessment of that language, and the purpose of the TIA, "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes," *id.*, it is arguable that the TIA now applies in the Virgin Islands.

Regardless, the Court need not resolve this issue if the tax comity doctrine applies with equal force to the claims in this case. As such, the Court will turn to that issue.

### C. Tax Comity Doctrine

#### 1. Applicability to the Virgin Islands

With respect to the Virgin Islands, the Third Circuit has taken a more nuanced view on comity issues than it has taken on the TIA. As originally stated in *Pan American* and reaffirmed in *Bluebeard's Castle*, federalism concerns do not apply in the Virgin Islands because the Virgin Islands is not sovereign. *See Bluebeard's Castle, Inc*, 321 F.3d at 400-01; *Pan Am. World Airways, Inc.*, 459 F.2d at 390-91. Nevertheless, as the Court in *Bluebeard's Castle* noted, Congress may opt to "treat Virgin Islands law … with much of the independence of state law." *See*

*Bluebeard's Castle, Inc*, 321 F.3d at 400-01. Indeed, in that case, the Third Circuit held that principles of federalism did not apply because Congress had entered the field of local property taxation. *See id.*

Having reviewed *Bluebeard's Castle*, the Court finds that there are two plausible interpretations of that decision: (1) that after the 1984 amendments, whenever the *Court has federal question jurisdiction*, comity or federalism-like concerns do not apply, or (2) that after the 1984 amendments, whenever *Congress has entered the taxation field*,[5] comity or federalism-like concerns do not apply. Having considered the issue, the Court is satisfied that the latter interpretation is the better interpretation.

The Court reaches that conclusion for several reasons. First, that conclusion is consistent with the 1984 amendments to the Revised Organic Act and subsequent Third Circuit jurisprudence. As previously noted, the Revised Organic Act was amended in 1984 to provide that:

> The relations between the courts established by
> the Constitution or laws of the United States and
> the courts established by local law with respect

---

[5] By, for example, specifying that the District Court has exclusive jurisdiction over income tax proceedings. *See* 48 U.S.C. § 1612(a) ("The District Court of the Virgin Islands shall have exclusive jurisdiction over all criminal and civil proceedings in the Virgin Islands with respect to the income tax laws applicable to the Virgin Islands ….").

> to appeals, certiorari, removal of causes, the issuance of writs of habeas corpus, and other matters or proceedings shall be governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States in such matters and proceedings.

48 U.S.C. § 1613. The Third Circuit has interpreted 48 U.S.C. § 1613 to require deference to the local courts when an Article III district court would similarly defer to a state court. *See Edwards v. HOVENSA, LLC*, 497 F.3d 355, 360 (3d Cir. 2007) ("Now that § 1613 mandates that the relations between courts established by laws of the United States, e.g., the Revised Organic Act, and courts established by local law should mirror the relations between state and federal courts, we conclude that § 1613 makes the Erie doctrine and the Rules of Decision Act applicable to the District Court of the Virgin Islands."); *see also Attorney Gen. of Guam v. Torres*, 419 F.3d 1017, 1024 (9th Cir. 2005), *opinion withdrawn as moot*, *Attorney Gen. of Guam v. Thompson*, 441 F.3d 1029 (9th Cir. 2006)("If … [this provision of the Guam Organic Act, which is substantively identical to 48 U.S.C. § 1613] does not authorize deference to Guam's courts under the *Younger* abstention doctrine, it clearly encourages such deference. The statute provides that the relations between federal courts and Guam's courts should be similar to those

between federal and state courts, and abstention appears to fall within the 'other matters or proceedings' governed by that relationship. Accordingly, we read 48 U.S.C. § 1424-2 as supporting and encouraging our holding [that *Younger* abstention is applicable to Guam].").

Indeed, relying on 48 U.S.C. § 1613, the Third Circuit has broadly stated that "[w]e see no reason not to incorporate the federalism principles applicable throughout the circuit into our relationship with the Virgin Islands courts." *Edwards*, 497 F.3d at 360. Consistent with that statement, the Third Circuit has repeatedly applied other comity-based abstention doctrines to the Virgin Islands. *See, e.g., Williams v. Gov't of Virgin Islands Bd. of Med. Examiners*, 360 F. App'x 297, 301 (3d Cir. 2010) (holding that the *Younger* abstention doctrine applies in the Virgin Islands); *Kendall v. Russell*, 572 F.3d 126, 130 n.3 (3d Cir. 2009) (same). Thus, the general rule in the Virgin Islands is that comity governs the relationship between this Court and the local courts.

Second, such a distinction provides appropriate weight to Congressional determinations. When Congress enters the field of local taxation, it treats the Virgin Islands differently than it treats the states. In doing so, Congress has determined that the benefits of Congressional action outweigh the comity concerns

which now generally govern the relationship between this Court
and the local courts. When Congress makes that determination, it
would be incongruent for this Court to reach the opposite
conclusion and hold that comity concerns prevent the Court from
enforcing the Congressionally-created right. In contrast, when
Congress has merely extended constitutional provisions to the
Virgin Islands or otherwise passed a law which has the same
effect in the territory as it does in the states, Congress has
not evinced any intent to depart from its default rule.

Third, a similar distinction has been made by the District
Court of Guam after considering the Third Circuit's opinion in
*Bluebeard's Castle*. *See Gov't of Guam v. Camacho*, No. CV05-
00038, 2006 WL 1805686 ("*Camacho*"). In *Camacho*, the district
court held that a tax action was barred by principles of comity.
Its holding specifically distinguished *Bluebeard's Castle*:

> The Attorney General relies on *Berne Corp. v.
> Government of Virgin Islands,* 262 F.Supp.2d 540
> (2003) … [as support for his argument that Tax
> Injunction Act principles do not apply in Guam].
> In *Berne,* real property owner taxpayers sued the
> government in a civil rights action to compel the
> territory to appraise, assess, and tax their real
> property based on its actual value. The taxpayer
> alleged that the government was not complying with
> the federal statute requiring that the Virgin
> Islands to calculate real property taxes based
> upon the actual value of the property. 48 U.S.C.
> § 1401a. The district court found that the
> property tax system was unlawful because it
> "systemically employ[ed] a method of assessment

not calculated to determine the *actual* value of properties as required by 48 U.S.C. § 1401a." *Id.* at 561 (emphasis added).

The Third Circuit agreed with the district court and found that the Virgin Islands Property tax system was not a state tax system, nor was it entirely a territorial tax system. "It is partially a federal tax system, and it is not apparent that the federal government should adopt a hands-off approach to the federal aspects of a hybrid federal/territorial system." *Bluebeard's Castle, Inc. v. Government of Virgin Islands,* 321 F.3d 394, 400 (3ʳᵈ Cir.2003). "To be sure, property tax law in the Virgin Islands is, for the most part, 'local' law, just as it is in the several states. (citation omitted). But its local character derives from Congress. To the limited extent that Congress has entered the field and instituted its own substantive requirements, the local character of property taxation in the Virgin Islands has been altered." *Id.* at 400.

Here, there is no indication that Congress intended to retain control over the matter, similar to the Virgin Islands. Unlike the Virgin Islands, there is no express federal statutory scheme governing Guam's property tax system in Guam's Organic Act. 48 U.S.C. § 1423a ("The legislative power of Guam shall extend to all rightful subjects to include … taxes and assessments on property … as may be uniformly provided by the Legislature of Guam"). Guam has acted under its constitutional authority to pass its own statutory real property tax scheme. Accordingly, this Court does not find the application of the principles to the Tax Injunction Act to be any less applicable simply because Guam is a territory rather than one of the fifty states.

*Id.* at 4 (footnote removed).

Fourth, a similar distinction was recognized by this Court prior to *Bluebeard's Castle*. In *35 Acres Assocs. v. Adams*, the plaintiffs challenged a local stamp tax under local law. *See* 962 F. Supp. 687, 688-89 (D.V.I. 1997). That case was removed to the district court. *Id.* at 689-90. The district court held that it lacked jurisdiction over the matter and dismissed the matter. It reasoned that:

> Neither side has suggested that the Government of the Virgin Islands does not possess sufficient attributes of the sovereignty of a State to require the application of the principles of comity and federalism underlying the Tax Injunction Act. *See In re Jaritz Industries, Ltd.,* at 463-64 (discussing *Harris v. Boreham,* 233 F.2d 110, 114 (3d Cir.1956)). Therefore, this Court may not hear a case which will necessarily involve or interfere with the Government's administration of its tax code.

*Id.* at 690-91.

In contrast, when the property tax issue raised in *Bluebeard's Castle* and *Berne* was before the district court, the district court distinguished *35 Acres Associates* and held that the tax injunction act did not bar the suit. Specifically, it reasoned that:

> Since the subject of this lawsuit is a federal statute and not a local, territorial tax, it is not barred by the State Tax Injunction Act, 28 U.S.C. § 1341 ("The district courts shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in

> the courts of such State"). *Compare 35 Acres Assocs. v. Adams,* 36 V.I. 270, 274-75, 962 F.Supp. 687, 690 (1997) (holding that stamp tax imposed on privilege of recording deed on the territory's land records is local, non-federal tax covered by State Tax Injunction Act).

*Berne Corp. v. Gov't of Virgin Islands*, 120 F. Supp. 2d 528 n.3, 531 (D.V.I. 2000).

As such, the Court finds that the Revised Organic Act and case law from the Third Circuit, this Court, and other courts counsel in favor of a holding that the tax comity doctrine applies to the territory under appropriate circumstances. Therefore, when plaintiffs file suit seeking injunctive or declaratory relief or damages with respect to a local tax imposed on them by the Virgin Islands Government, they may only proceed in this Court if: (1) Congress has entered the field and the plaintiffs are seeking to enforce such a federally-created right, or (2) a plain, adequate, and complete remedy is not available in the local courts.

## 2. Applicability to this Case

### i. Classification as a Tax

Having determined that the tax comity doctrine applies to the Virgin Islands, the Court must determine whether that doctrine applies to this case. As a preliminary matter, the

Court must decide whether the Disparate Tax Schedule and the timeshare fee should be treated similarly.

In *Robinson Protective Alarm Co. v. City of Philadelphia*, 581 F.2d 371, 376 (3d Cir. 1978), the Third Circuit recognized a distinction between fees and taxes when applying the TIA. In that case, five central alarm station companies brought suit against the City of Philadelphia challenging the collection of a percentage of their gross earnings pursuant to an ordinance. *Robinson Protective Alarm Co.*, 581 F.2d at 373. The central alarm station companies argued that the amounts payable pursuant to that ordinance were not a tax, hence suits to restrain their collection were beyond the scope of the TIA. *Id*. at 374. The Third Circuit held that the ordinance was a tax, thus subject to the TIA, because:

> [The ordinance] … is a revenue raising measure collected annually in a manner similar to other gross receipts levies. From the record it appears that moneys collected are added to the public fisc, rather than applied exclusively to contractual services owed central alarm station companies. Anticipatory federal adjudication will clearly interfere with the City's collection of its revenues.

581 F.2d at 376.

Other circuit courts have also addressed this issue. The Fourth Circuit has indicated that:

> The "classic tax" is imposed by the legislature upon a large segment of society, and is spent to benefit the community at large. The "classic fee" is imposed by an administrative agency upon only those persons, or entities, subject to its regulation for regulatory purposes, or to raise "money placed in a special fund to defray the agency's regulation-related expenses."

*DIRECTV, Inc. v. Tolson*, 513 F.3d 119, 125 (4th Cir. 2008) (internal citation removed). Thus, that court:

> consider[s] three factors: (1) what entity imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the monies obtained by the charge. When this inquiry places the charge somewhere between the "classic tax" and the "classic fee," it is the purpose behind the statute that imposes the charge, as reflected in the ultimate use of its proceeds, that is the most important factor.

*Id.* (internal citation and footnote removed).

The Seventh Circuit applies a slightly different test:

> The only material distinction is between exactions designed to generate revenue—taxes, whatever the state calls them (for what is a "tax" for purposes of the Tax Injunction Act is a question of federal rather than state law, *RTC Commercial Assets Trust 1995-NP3-1 v. Phoenix Bond & Indemnity Co.,* 169 F.3d 448, 457 (7th Cir.1999); *Wright v. Riveland,* 219 F.3d 905, 911 (9th Cir.2000); *American Landfill, Inc. v. Stark/Tuscarawas/Wayne Joint Solid Waste Management District,* 166 F.3d 835, 837 (6th Cir.1999))—and exactions designed either to punish (fines, in a broad sense) rather than to generate revenue (the hope being that the punishment will deter, though deterrence is never

> perfect and therefore fines generate some state
> revenues), or to compensate for a service that the
> state provides to the persons or firms on whom or
> on which the exaction falls (or, what is similar,
> to compensate the state for costs imposed on it by
> those persons or firms, other than costs of
> providing a service to them): in other words, a
> fee. "If the fee is a reasonable estimate of the
> cost imposed by the person required to pay the
> fee, then it is a user fee and is within the
> municipality's regulatory power. If it is
> calculated not just to recover a cost imposed on
> the municipality or its residents but to generate
> revenues that the municipality can use to offset
> unrelated costs or confer unrelated benefits, it
> is a tax, whatever its nominal designation."
> *Diginet, Inc. v. Western Union ATS, Inc.,* 958 F.2d
> 1388, 1399 (7th Cir.1992).

*Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 728-29 (7th Cir. 2011) (en banc). However, as the D.C. Circuit Court identified, the three factors identified by the Fourth Circuit "seem to overlap both with each other and with the criterion" identified by the Seventh Circuit. *See Am. Council of Life Insurers v. D.C. Health Ben. Exch. Auth.*, 815 F.3d 17, 19-20 (D.C. Cir. 2016).

Here, the complaint alleges that: (1) the timeshare fee was imposed by the legislature, *see* ECF No. 1, Complaint, at ¶ 9; (2) that 85% the revenue from the timeshare fee[6] will be placed

---

[6] Great Bay also appears to contend that the remaining 15% of the revenue is not adequately linked to timeshare owner/users. *See* ECF No. 39, Memorandum in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss, at 3. It is unnecessary for the Court to reach that issue here.

in the General Fund or will be used for expenses that are not related to timeshare owners, *see id.* at ¶¶ 11-12; 33 V.I.C. § 54(b)(3)(D)(ii)-(iv); and (3) there has been no attempt to link the amount of the timeshare fee to the services used by the timeshare owners, *see* ECF No. 1, Complaint, at ¶ 12 ("The Act also requires the Bureau of Economic Research to conduct a study on the impact of timeshare activities and components in the Virgin Islands within two years of implementation. There is no indication that any study of the impact of timeshare activities and components in the Virgin Islands was ever conducted prior to passage of the Act.") (citations omitted). Under these circumstances, the Court is satisfied that the timeshare fee is properly treated as a tax under either test.

With respect to the Disparate Tax Schedule, the Court is satisfied that that revenue generating measure is a tax. Indeed, Great Bay concedes in its motion to dismiss that the Disparate Tax Schedule is a tax. *See* ECF No. 39, Memorandum in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss, at 22. ("[W]hile Plaintiffs challenge the constitutionality of 33 V.I.C. § 2301 (admittedly a tax), Plaintiffs also challenge the 'Environmental/Infrastructure Impact Fee' imposed by 33 V.I.C. § 54.").

Having determined that both the Disparate Tax Schedule and the timeshare fee are taxes, the Court holds that the tax comity doctrine applies to challenges to both revenue measures.

### ii. Great Bay's Claims

The Court will now address whether the tax comity doctrine applies to the specific claims raised by Great Bay and, if so, prevents the Court from proceeding on any of those claims.

Here, Great Bay alleges violations of the United States Constitution. A plaintiff in any state in the United States could challenge the constitutionality of a state tax in federal court only if the state does not provide remedies that are plain, adequate, and complete. *See, e.g., Fair Assessment in Real Estate Ass'n, Inc.*, 454 U.S. at 116; *Great Lakes Dredge & Dock Co.*, 319 U.S. 297-302; *Matthews*, 284 U.S. at 525-26. Congress does not treat the Virgin Islands differently than a state with respect to a state's ability to fully regulate real property taxation. *See* S. Rep. No. 110-19, at 1; *see also Berne Corp.*, 570 F.3d at 136-37. Additionally, Congress does not treat the Virgin Islands differently than a state with respect to the relationship between the federal courts and state courts. 48 U.S.C. § 1613; *see also Privateer Bay Mgmt Corp.*, 102 F. App'x at 231. Thus, Great Bay may only proceed with this action

if a plain, adequate, and complete remedy is not available in the local courts. *See generally supra* Part III.C.1.

The burden of showing that the state remedy is insufficient lies with the plaintiff. *Cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14, 107 S. Ct. 1519, 1528, 95 L. Ed. 2d 1 (1987) (holding, with respect to *Younger* abstention, that "the burden … rests on the federal plaintiff to show "that state procedural law barred presentation of [its] claims") (quoting *Moore v. Sims*, 442 U.S. 415, 432, 99 S. Ct. 2371, 2382, 60 L. Ed. 2d 994 (1979)).

Great Bay's claims can be divided into four categories[7]: (1) claims that challenge the constitutionality of the Disparate Tax Schedule--Counts One, Two, Three, and Six (the "disparate tax schedule claims"); (2) claims that challenge the constitutionality of the timeshare fee--Counts One, Two, Three, and Six (the "timeshare fee claims"); (3) a claim that challenges the constitutionality of the burdens placed on the timeshare association (the "timeshare association claim")--Count Four; and (4) a takings claim (the "takings claim")--Count Five.

---

[7] The Court notes that to the extent certain counts challenge both the timeshare fee and the Disparate Tax Schedule, those counts are represented in multiple categories of claims.

The Court will now determine whether Great Bay has met its burden with respect to each claim.

### a. Timeshare Fee Claims

The timeshare fee claims challenge the constitutionality of a tax. If Great Bay succeeded on any of these claims and received the relief requested, the Virgin Islands ability to collect property tax would be reduced.[8]

As such, these claims, like the disparate tax schedule claims, clearly fall within the scope of the tax comity doctrine and the Court must determine whether the Virgin Islands offers a plain, adequate, and complete remedy.

The Virgin Islands permits a taxpayer to sue for a refund of the timeshare fee. *See* 33 V.I.C. § 1692. However, because, unlike the Disparate Tax Schedule, the timeshare fee is imposed in subtitle 1 of Title 33, *see* 33 V.I.C. § 54(b), no injunctive relief is available in the Superior Court of the Virgin Islands,

---

[8] To the extent that Great Bay's claims challenge the competitive advantage gained by owners of non-timeshare properties who rent out their homes and do not pay the timeshare fee, another possible remedy is requiring those owners to pay a similar fee. After considering the four factors identified in *Levin*, the Court is satisfied that the tax comity doctrine still applies because: (1) this law broadly addresses commercial matter; (2) multiple remedies could apply; (3) the local courts may better address this matter, and (4) without reaching the merits, (a) no suspect classification is implicated and the right to own timeshares does not appear to implicate a right fundamental enough to warrant the exercise of jurisdiction in light of the other factors.

*see* 33 V.I.C. § 1691(a); 33 V.I.C. § 1931(7).[9] Furthermore, declaratory relief is, at the very least, not clearly available. *Cf. California v. Grace Brethren Church*, 457 U.S. 393, 408–11, 102 S. Ct. 2498, 2508–09, 73 L. Ed. 2d 93 (1982) (holding that language in the TIA, which prohibited "enjoin[ing], suspend[ing] or restraining the assessment, levy or collection of tax" also prohibited awarding declaratory relief). As such, the only remedy available to a Virgin Islands taxpayer challenging the timeshare fee is a refund.

Great Bay contends that because of the Virgin Islands current troubled financial situation, a refund action is not a

---

[9]  The Virgin Islands also contend that injunctive and other relief is available in the Superior Court by asserting a Section 1983 claim in that court.

"State courts as well as federal courts have jurisdiction over § 1983 cases." *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 358, 110 S. Ct. 2430, 2433, 110 L. Ed. 2d 332 (1990). Furthermore, if a party files a Section 1983 claim in state court, injunctive relief may be available even when prohibited by state law because "[w]hen they have jurisdiction, state courts have been compelled to provide federal remedies, notwithstanding the existence of less intrusive state-law remedies." *Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 587, 115 S. Ct. 2351, 2355, 132 L. Ed. 2d 509 (1995); *see also Haywood v. Drown*, 556 U.S. 729, 741-42, 129 S. Ct. 2108, 2118, 173 L. Ed. 2d 920 (2009) (holding that a state jurisdictional statute that was "designed to shield a particular class of defendants (correction officers) from a particular type of liability (damages) brought by a particular class of plaintiffs (prisoners)" was unconstitutional insofar as it prohibited a state court from awarding damages on a Section 1983 claim).

Regardless, the United States Supreme Court has observed that it "is not entirely clear" whether a state court must entertain a Section 1983 claim in a tax case. *Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 234, n. 7, 107 S.Ct. 1722, 1730, n. 7, 95 L.Ed.2d 209 (1987). Moreover, the Supreme Court of the Virgin Islands has never specifically considered whether such a claim may be pursued in the Superior Court. Under these circumstances, the Court is not persuaded that such a remedy is clearly available.

plain, adequate, and complete remedy. It bases that argument on two grounds: (1) that the state of the local courts' dockets guarantees lengthy litigation; and (2) that, even if a suit is successful, there is no guarantee of repayment due to the Virgin Islands's financial situation.

In *Stewart Dry Goods Co. v. Lewis*. 287 U.S. 9, 53 S. Ct. 68, 77 L. Ed. 135 (1932), the United States Supreme Court addressed a similar argument. In that case, Stewart Dry Goods Co. ("Stewart") alleged that a gross sales tax violated the Due Process Clause, the Equal Protection Clause, and the Commerce Clause. Stewart asserted that: (1) "the only remedy" was to "obtain warrants upon the general fund of the state in the hands of the state treasurer to be paid if and when funds are available for the payment of such warrants in the usual and orderly course"; (2) there were "outstanding many such warrants drawn by the auditor of public accounts upon the general fund in the hands of the state treasurer, which have been outstanding since June, 1927, and cannot be collected by the owners or holders for lack of funds in the treasury"; and (3) at the outset of the suit there were "outstanding warrants aggregating $9,880,502.76 drawn by the auditor of public accounts upon the state treasurer, presented for payment, but not paid for lack of funds." *Id.* at 11. Nevertheless, a three-judge panel in the

district court held that: (1) an adequate remedy at law existed;

and (2) as such, no injunctive relief was available. *See id.* at

10.

The United States Supreme Court reversed and remanded the

case to the district court. *Id.* The Supreme Court ordered the

district court to hold a:

> final hearing upon the merits, without prejudice
> to a determination upon evidence with respect to
> the questions of the status of outstanding
> warrants upon the general fund in the state
> treasury, and whether warrants of the sort
> contemplated by section 10 of the act in question
> are accorded preference in payment over other
> warrants and the basis, if any, for the assurance
> that such preference will be continued so that in
> the event of actions by the plaintiffs at law under
> section 10 they would be afforded a certain
> reasonably prompt and efficacious remedy.

*Id.*

On remand, the three-judge panel in the district court

held, after holding an evidentiary hearing, that the suit for

injunctive relief could proceed. It reasoned that:

> the uniform practice of the treasurer of the
> commonwealth of Kentucky has been to pay warrants
> issued by the auditor for the refund of taxes when
> presented, and in advance of outstanding interest-
> bearing warrants, and that such has been the
> practice of the present treasurer of the
> commonwealth of Kentucky, whose term of office
> does not expire until January, 1936. It is further
> established by the evidence that the present state
> treasurer has followed the practice of keeping
> himself in financial position to refund all taxes
> which are paid under legal protest, and that he

> will be in a position to and will do so with
> reference to the taxes involved in these actions
> in event it shall be finally determined that such
> taxes were illegally collected, notwithstanding
> the fact that there were outstanding as of June
> 30, 1933, approximately $15,000,000 of interest-
> bearing warrants against the general expenditure
> fund, out of which fund section 10 of the act
> directs refunds under the act to be made. We know
> of no opinion of the Court of Appeals of Kentucky
> giving its sanction to this practice, nor does the
> record disclose that the Attorney General of the
> state has ever ruled that the practice was
> authorized by any statute of the state. Certainly
> the practice is consonant with common justice;
> but, in view of the doubt expressed by the Supreme
> Court as to whether section 10 of the act
> authorizes such preferential treatment, and in
> view of the further fact that, if refunds under
> the act are not given preference, it is uncertain
> when they would be paid, we feel constrained to
> hold that the remedy at law given by section 10 of
> the act does not afford that certainty necessary
> to repel equity jurisdiction.

*Stewart Dry Goods Co. v. Lewis*, 7 F. Supp. 438, 440 (W.D. Ky.

1933).

A similar issue was raised before the United States Court

of Appeals for the Ninth Circuit in 1940. *See Adams Cty. v. N.*

*Pac. Ry. Co.*, 115 F.2d 768 (9th Cir. 1940). In *Adams County v.*

*Northern Pacific Railway Company*, the plaintiffs sought to

distinguish *Stewart Dry Goods Company* by:

> pointing out that whereas under the statute
> involved in that case the warrants were payable
> out of a general fund without any preference, the
> Washington statute authorizing the refund action

> [in *Adams*] gives judgments for tax refunds
> preference over other claims against the fund ….

*Id.* at 776. Nevertheless:

> the trial court held … that such statutory
> preference was in direct conflict with the State
> Constitution which itself gives preference to
> other specified mandatory and emergency expenses.
> Washington Const. Art. VII, Secs. 1, 8; Art. VIII,
> Secs. 1, 2. In view of this constitutional
> preference, of an initiative measure which placed
> an upper limit upon the tax levies, and of the
> great extent of tax delinquencies which it found
> to have accrued in the state in each of the three
> years preceding 1935, the trial court found that
> the plaintiff 'would not receive a substantial
> portion of any sum paid under protest' in the event
> of success in the refund action.

*Id.* The Ninth Circuit affirmed because the district court's

"finding was supported by evidence and leads to the conclusion

that the exclusive remedy open to the plaintiff in the state

courts was not 'plain, speedy and efficient' and that the trial

court did not err in assuming jurisdiction of these injunction

proceedings." *Id.*

That principle was recently applied by the United States

Court of Appeals for the First Circuit. In *Wal-Mart Puerto Rico,

Inc. v. Zaragoza-Gomez*, 834 F.3d 110, 112 (1st Cir. 2016), Wal-

Mart Puerto Rico, Inc. ("Wal-Mart") challenged the

constitutionality of the local Puerto Rican alternative minimum

tax. Puerto Rico moved to dismiss the case for lack of subject-

matter jurisdiction. The district court denied that motion,

holding that the Butler Act[10]--which operates like the TIA with respect to Puerto Rico--did not bar the action because no plain, speedy, and efficient remedy was available in the Puerto Rican courts. *Id.* at 115. The district court then resolved the case on its merits and granted injunctive and declaratory relief to Wal-Mart. *Id.*

Puerto Rico appealed. On appeal, Puerto Rico renewed its jurisdictional challenge. *Id.* at 116. The First Circuit agreed with the district court that no plain, speedy, and efficient remedy was available in the Puerto Rican courts. It reasoned that:

> The only local remedy available to Wal-Mart PR in the Puerto Rico courts is Puerto Rico's tax-refund process. P.R. Laws Ann. tit. 13, § 261; *Pleasures of San Patricio, Inc.*, 596 F.3d at 7. Under the tax-refund process, a taxpayer contesting a tax must first pay the contested tax and then file a tax return requesting a refund or credit from the Secretary of the Treasury. *Pleasures of San Patricio, Inc.*, 596 F.3d at 7. If the Secretary denies the refund, the taxpayer may appeal the denial in the Puerto Rico court system and then seek review by certiorari in the United States Supreme Court. *Id.* at 8. We have held in previous cases—before enactment of the amended AMT now

---

[10] The Butler Act provides that "No suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the United States District Court for the District of Puerto Rico." 48 U.S.C. § 872. The Butler Act predates the Tax Injunction Act and omits the textual exception specified in the Tax Injunction Act. *See Wal-Mart Puerto Rico, Inc. v. Zaragoza-Gomez*, 834 F.3d 110, 117-119(1st Cir. 2016). Nevertheless, the First Circuit has held that the same exception applies. *See id.*

being challenged, the Special Fiscal and Operational Sustainability Act of 2014 ("Fiscal Sustainability Act"), and Treasury regulations awarding priority to other Puerto Rico debt payments over tax refunds—that this tax-refund process is a plain, speedy, and efficient remedy for the purpose of the Butler Act because it provides the taxpayer with a full hearing and judicial determination of any constitutional objections to a tax. *Id.* at 8-9; *Carrier Corp.*, 677 F.2d at 164.

The district court held that notwithstanding our previous cases, Puerto Rico's current financial legislation and status compelled the opposite conclusion. The district court projected that under the most conservative estimate, in which denial of the refund by the Treasury takes one year and Wal-Mart PR successfully obtains an injunction on the collection of the AMT from the Puerto Rico Court of First Instance, Wal-Mart PR would be entitled to a $70 million tax refund—the $30 million for Fiscal Year 2016 and another estimated $40 million for the following year. Wal-Mart PR asserts that the more realistic tax-refund liability figure if it continues to do business in Puerto Rico at the present AMT rate is $214 million. The district court found that Puerto Rico would be unable under the current state of affairs to satisfy a judgment of $70 million (or, for that matter, $214 million).

More critically, the district court noted that Puerto Rico law had recently been altered, as part of the Fiscal Sustainability Act, to impose a new obstacle by capping the payment of any judgment exceeding $20 million against the Commonwealth at $3 million per year. The district court also noted that Puerto Rico can refuse to honor even that $3 million annual payment "whenever it finds there are 'no funds available' that year." *Wal-Mart P.R., Inc.*, 174 F.Supp.3d at 628, 2016 WL 1183091, at *30. It further found that such postponement is likely to occur almost indefinitely because recent Puerto Rico Treasury guidelines prioritize payment

of other government obligations over the payment of tax refunds. In addition, the district court concluded that there were no tax credits available under Puerto Rico law that would suffice as an alternative adequate remedy for Wal-Mart PR. The district court's reasoning, in short, was that even if Puerto Rico law furnishes Wal-Mart PR with a sufficient procedural avenue for challenging the AMT, there is still no plain, speedy, and efficient remedy because of the inability of Puerto Rico courts to see to it that an ultimate judgment in favor of Wal-Mart PR is satisfied. In response, Puerto Rico asserts that it may force Wal-Mart PR to pay over $200 million in unconstitutionally imposed taxes and make Wal-Mart PR wait a minimum of seventy years for repayment, if then.

We agree with the district court that Puerto Rico has now hamstrung its courts so as to deprive Wal-Mart PR of a plain, speedy, and efficient remedy at the time of this suit. Indeed, the local remedy available to Wal-Mart PR today is fundamentally different from what would have been available before the enactment of the *121 Fiscal Sustainability Act and recent Treasury guidelines. To elaborate, the Secretary does not challenge the district court's projection that, even under the most conservative estimate, the Puerto Rico tax-refund process would require Wal-Mart PR to make $70 million in AMT payments before Wal-Mart PR can, if then, obtain an injunction against the AMT in the Puerto Rico courts. Nor does the Secretary challenge the district court's prediction that, because of the $3 million statutory cap, Wal-Mart PR may never receive a full refund. And even if it does, the full refund will take well over the apparent minimum of two decades because payment of even $3 million per year is likely to be postponed indefinitely, with no evident recourse for Wal-Mart PR.

*Id.* at 119-121. The First Circuit also noted that:

> We stress again that we do not hold that a mere
> delay in recovery renders a remedy inadequate. In
> normal course, one would not be surprised that it
> might take several years to litigate a refund
> claim and collect the judgment. The Supreme Court
> has held, for example, that a two-year delay with
> no interest does not render a state remedy
> inadequate. *See Rosewell*, 450 U.S. at 520-21, 101
> S.Ct. 1221. Wal-Mart PR's case, therefore, might
> be very different if it faced a $21 million
> overpayment that might take seven years to collect
> at $3 million per year. Where one draws the line,
> we need not say other than that twenty-three years
> is on the other side.

*Id.* at 123.

In support of its contention that a refund action in the

local courts is not an adequate remedy, Great Bay has adduced,

among other evidence, the deposition testimony from Valdamier

Collens ("Collens"), the Virgin Islands Finance Commissioner.

At his deposition, Collens testified to several issues

relevant to the Court's inquiry. Collens agreed the "Government

of the Virgin Islands is in dire financial straits" and that

those "dire financial straits affect the availability of funds

to pay tax refunds." ECF No. 97-5, Plaintiffs' Brief Pursuant to

March 22nd Order Regarding Tax Litigation and Resolution in the

Virgin Islands, Exhibit #5, at 44:9-19. Collens further

testified that there are not any written procedures determining

allocation of funds, but there are "general rules" such as that

"the highest priority for the Government from the General Fund

side is the payment of salary and fringe benefits. That makes up

seventy percent of the budget." *Id.* at 24:23-25:6. The second

highest priority is "allotments," which "pretty much serve the

same purpose [as salaries and fringe benefits] … but … go to

[semiautonomous] entities outside the general central Government

… [s]uch as the hospitals, … Waste Management, … [and] the

University of the Virgin Islands."[11] *Id.* at 25:8-25:20. "[If]

after that point, there is enough excess cash to satisfy

available refunds," Collens contacts the Director of Board of

Internal Revenue and will request a tax refund schedule from

him. *Id.* at 11:2-17. Collens indicated that the Virgin Islands

government currently owns forty-five to fifty million dollars in

tax refunds. ECF No. 99-3, Defendants' Opposition to Plaintiffs'

Brief Pursuant to March 22, 2018 Order, Exhibit #3, at 41:23-25.

---

[11] Certain special funds are not subject to that priority. ECF No. 99-3, Defendants' Opposition to Plaintiffs' Brief Pursuant to March 22, 2018 Order, Exhibit #3, at 24:6-12. Although the Government asserts that judgments are paid out of such a special fund, the Government did not adduce the cited deposition testimony. Furthermore, it is unclear whether a plaintiff could rely on the existence of a special fund. Collens testified that:

> Special is not restricted. But again, you know, everything is in a pooled account. There has been decades of - how should I say - fund balances that don't necessarily match to cash availability. And so, there could be an instance whereby - it hasn't happen yet - but there could be an instance where special funds - there is not enough cash to satisfy something, and we would just have to - the only discretion we have is to set it aside until the cash becomes available.

ECF No. 99-3, Defendants' Opposition to Plaintiffs' Brief Pursuant to March 22, 2018 Order, Exhibit #3, at 22:16-25.

He also acknowledged that "refund schedules for 2017, 2016, 2015" are "definitely awaiting processing by Finance because of availability of funds." ECF 97-5, Plaintiffs' Brief Pursuant to March 22nd Order Regarding Tax Litigation and Resolution in the Virgin Islands, Exhibit #5, at 36:20-25.

When asked whether the outstanding tax obligations would be paid in the next six months, Collens testified that "it all depends on availability of cash. And as you know our circumstances, we've got significant loss revenues and I can't project." ECF No. 99-3, Defendants' Opposition to Plaintiffs' Brief Pursuant to March 22, 2018 Order, Exhibit #3, at 44:2-8.

On the other hand, Collens testified that refunds for taxes other than income taxes "are handled rather routinely and without the need for a reserve account." *See id.* at 86:12-16. He also testified that refund of fees are, after a request from the relevant agency, generally paid within five to seven business days. *Id.* at 13:11-14:15. Similarly, judgments are generally paid five to seven business days after a request from the Virgin Islands Department of Justice. *Id.* at 14:16-15:8. Collens further testified that there were "different buckets" for judgments and settlements. "For civil cases, … there is a bucket for less than five thousand dollars and then there is another bucket for more than five thousand dollars." *Id.* at 14:23-15:15.

Funds are segregated "along those lines." *Id.* at 15:15-15:16.

Collens also indicated that "[o]ther taxes … are not as significant as an annual sixty million dollar … [i]ncome tax." *Id.* at 93:1-8.

Nevertheless, Collens conceded that judgments awarding tax refunds are subject to the availability of funds. ECF No. 97-5, Plaintiffs' Brief Pursuant to March 22nd Order Regarding Tax Litigation and Resolution in the Virgin Islands, Exhibit #5, at 65:8-66:20. Collens also testified that the statutorily-mandated reserve fund[12] for "other taxes," which includes the timeshare fee, has not been funded. *Id.* at 55:8-9, 93:2-19.

Under these circumstances, the Court is not satisfied that an adequate remedy is available in the local courts. The Commissioner of Finance has admitted that the Virgin Islands is in such dire financial straits that the payment of tax refunds

---

[12] Title 3, Section 179 of the Virgin Islands Code provides that:

> The Commissioner of Finance shall maintain in the General Ledger of the General Fund of the Treasury of the Virgin Islands an account to be designated as the reserve for other taxes and license refunds. There shall be credited directly to such reserve account monthly not less than five percent (5%) of the receipts from other taxes and license collections. Any refunds with respect to such collections shall be paid by the Commissioner of Finance without the necessity of annual appropriations and shall be chargeable to the reserve account. Funds not paid out of the reserve account in any fiscal year shall revert to the General Fund at the end of the fiscal year.

3 V.I.C. § 179.

is subject to the availability of funds and delayed for years.
In addition, a judicial decision invalidating the timeshare fee
could give rise to significant liability for the Virgin Islands
government.[13] Furthermore, no binding policy or law has been
identified that would require the payment of tax refunds to be
the first priority for the treasury.[14]

Accordingly, the Court will exercise jurisdiction over
Counts One, Two, Three, and Six, insofar as those claims
challenge the constitutionality of the timeshare fee.

### b. Disparate Tax Schedule Claims

The disparate tax schedule claims challenge the
constitutionality of a tax. If Great Bay succeeded on any of
these claims and received the relief requested, the Virgin
Islands ability to collect property tax would be reduced.[15]

---

[13] The bill that authorized the timeshare fee estimated that the fee would raise $19 million dollars annually. The parties have not submitted evidence of the amount raised by the timeshare fee to the Court. As such, the Court makes no finding that such an amount has been raised. Regardless, the Court is satisfied that significant sums of money would be refunded if the Court determined that the timeshare fee were unconstitutional.

[14] It also is not clear that a tax credit would be a meaningful remedy. Virgin Islands law provides that "[t]he credit of an overpayment of any tax in satisfaction of any internal revenue tax liability shall, for the purpose of any action for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed." 33 V.I.C. § 1692(d). If the timeshare fee were determined to be unconstitutional, providing a credit for future timeshare fee payments would not be an adequate remedy.

[15] To the extent that Great Bay's claims challenge the competitive advantage gained by owners of non-timeshare properties who rent out their homes and pay a lower tax rate, another possible remedy is increasing the tax rates for such properties. After considering the four factors identified in *Levin*, the Court is satisfied that the tax comity doctrine still applies because: (1)

As such, these claims clearly fall within the scope of the tax comity doctrine and the Court must determine whether the Virgin Islands offers a plain, adequate, and complete remedy.

In the Virgin Islands, property taxes may be paid under protest. *See* 33 V.I.C. § 2521. If property taxes are paid under protest, then:

> The party paying the tax and public sewer system user fee under protest may, at any time within 60 days after making said payment, and not thereafter, sue the Lieutenant Governor for recovery of the amount paid in the court having competent jurisdiction. If it is determined that the tax and public sewer system user fee was wrongfully collected the court may certify of record that the same was wrongfully paid, and shall be refunded and thereupon the Lieutenant Governor of Finance shall repay the same.

33 V.I.C. § 2522.

The Virgin Islands also authorizes taxpayers to "maintain an action to restrain illegal or unauthorized acts by a territorial officer or employee, or the wrongful disbursement of territorial funds." 5 V.I.C. § 80. That relief is limited. Indeed, Virgin Islands law provides that "no action for the purpose of restraining the assessment or collection of any

---

this law broadly addresses commercial matter; (2) multiple remedies could apply; (3) the local courts may better address this matter, and (4) without reaching the merits, (a) no suspect classification is implicated and the right to own timeshares does not appear to implicate a right fundamental enough to warrant the exercise of jurisdiction in light of the other factors.

internal revenues tax shall be maintained in any court." 33

V.I.C. § 1691(a).

Significantly, the term "internal revenue tax" is defined

as "any tax imposed by this subtitle [with certain exceptions.]"

33 V.I.C. § 1931(7). That provision appears in subtitle 1,

which addresses miscellaneous internal revenue taxes, such as

the timeshare fee. Property taxes are imposed in a different

subtitle, subtitle 2. As such, Virgin Islands law does not

prohibit the Superior Court from issuing injunctive relief with

respect to property taxes. Thus, where appropriate, the Superior

Court may issue temporary restraining orders and preliminary

injunctions. *See* V.I. R. CIV. P. Rule 65.

The Superior Court may also grant declaratory relief. *See* 5

V.I.C. § 1261. To expedite that relief, the Superior Court "may

order a speedy hearing of an action for a declaratory judgment

and may advance it on the calendar." 5 V.I.C. § 1269.

This Court's concerns regarding the adequacy of the remedy

provided by a suit for a refund discussed with regards to the

timeshare fee claims apply equally here. However, the additional

availability of injunctive and declaratory relief for the

disparate tax schedule claims may provide a plain, adequate, and

complete remedy.

Great Bay argues only that the congestion of the local courts' dockets constitutes lack of a plain, adequate, and complete remedy. The only evidence Great Bay adduces to support this contention are the reported number of pending civil cases, newly filed cases, and resolved cases for a fiscal year in the local courts.[16] Great Bay indicates that, because of the limited statistical data provided by the Virgin Islands court system, "it is impossible to extrapolate an 'average duration' of any case from … [the data available], much less the average duration of tax-specific cases." ECF No. 97, Plaintiffs' Brief Pursuant to March 22nd Order Regarding Tax Litigation and Resolution in the Virgin Islands, at 3.

When a state court remedy is not speedy, a federal court may enjoin the enforcement of a tax. *See, e.g., Rosewell*, 450 U.S. at 518-21 (suggesting that a federal court has jurisdiction to restrain a tax when state court relief may be delivered to a complainant with such delay as to render the underlying remedy inadequate). At the same time, the United States Supreme Court has held that "a legal remedy that provides … a refund without

---

[16] "In fiscal year 2016, there were a total of 2,608 pending civil cases at the beginning of the fiscal year. During that year another 1,223 civil cases were filed. However, only 928 of those cases were disposed of during that year. (*Annual Report of the U.S. Virgin Islands Judiciary & Court System*, p. 35, available at: http://www.visupremecourt.org/wfData/files/JUDICIARY-ANNUAL-REPORT-FINAL-6-1-2017.pdf)." ECF No. 97, Plaintiffs' Supplemental Brief in Response to Order of February 28, 2018, at 21.

interest in two years is 'a plain, speedy and efficient remedy' under the Tax Injunction Act." *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 528, 101 S. Ct. 1221, 1237, 67 L. Ed. 2d 464 (1981). The United States circuit courts have not treated two years as an outer limit on timeliness. For example, the Second Circuit has held that delay of over ten years did not render the remedy "not speedy" when the delay "appear[ed] to arise less from the inadequacy of the proceeding itself than from a combination of problems of state-court administration and the considerable tactical maneuverings engaged in by both LILCO and defendants." *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 433 (2d Cir. 1989). The Ninth Circuit has also held that a "three-year delay" was not unreasonable "in the context of a class action involving a complex tax issue." *Lerch v. Cascade Cty. Treasurer*, 12 F.3d 1107 (9th Cir. 1993).

The evidence that Great Bay has adduced does not establish the extent or cause of any delay. Rather, Great Bay proceeds on the presumption that the absence of statistical data about the time for disposition of Superior Court cases, yields a conclusion that there is no plain, adequate, and complete remedy. Significantly, however, a presumption that there is delay is not tantamount to evidence of a delay. In sum, Great Bay has not adduced evidence to sufficiently support its

contention that the declaratory and injunctive relief available in the Superior Court of the Virgin Islands is not plain, adequate, or complete. Accordingly, pursuant to the tax comity doctrine, the Court will dismiss Counts One, Two, Three, and Six, insofar as those claims challenge the constitutionality of the Disparate Tax Schedule.

### c. Timeshare Association Claim

In the timeshare association claim, Great Bay directly challenges the assessment of the timeshare fee against the timeshare association. *See* 33 V.I.C. § 54 ("[T]he timeshare association is responsible for any and all assessments or liens".) If the Court were to invalidate the provision which makes timeshare associations responsible for assessed timeshare fees, the Court would be restraining the assessment of the timeshare fee.

As such, this claim falls within the scope of the tax comity doctrine and the Court must determine whether the Virgin Islands offers a plain, adequate, and complete remedy.

A challenge to the assessment of the timeshare fee, whether by the timeshare owners or the timeshare association, is limited to the same remedies discussed in Section C.2.ii.a *supra*. Thus, as with Great Bay's challenge to the timeshare fee, the Court is satisfied that the Virgin Islands does not offer a plain,

*Great Bay Condominium Owners Association, Inc. et. al. v. Government of the*
*Virgin Islands, et. al.*
Civ. No. 2017-33
Memorandum Opinion
Page 56

adequate, and complete remedy with respect to the timeshare

association claim.

### d. Takings Claim

Great Bay's takings claim seeks compensation from the

Virgin Islands government for the fair value of the alleged

taking attributable to the decrease in property value. *See* ECF

No. 1, Complaint, at ¶ 50. "Before a takings claim is ripe,

plaintiffs should (subject to certain exceptions) comply with

two prudential requirements set forth in the Supreme Court's

decision *Williamson County Regional Planning Commission v.*

*Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S. Ct. 3108, 87

L. Ed. 2d 126 (1985). First, the "finality rule" requires that

the government "has reached a final decision regarding the

application of the regulation to the property at issue." *Id.* at

186. Second, the plaintiff must seek and be denied just

compensation using the state's procedures, provided those

procedures are adequate. *Id.* at 194." *Knick v. Twp. of Scott*,

862 F.3d 310, 323 (3d Cir. 2017)

There is no evidence here that Great Bay has sought and

been denied just compensation by the Virgin Islands. Great Bay's

only argument that such procedures would be inadequate is based

on the congestion of the local docket discussed in Section

C.2.ii.b *supra*. Thus, the Court is satisfied that Great Bay's

takings claim is unripe and should be dismissed.


**S\_____**
        **Curtis V. Gómez**
        **District Judge**